**Tony GASKINS, Petitioner**

v.

**Ronald DUVAL, Respondent.**

**Civil Action No. 04–12255–WGY.**

United States District Court,
D. Massachusetts.

Sept. 9, 2009.

---

See also 89 F.Supp.2d 139.

John J. Barter, Boston, MA, for Petitioner.

Eva M. Badway, Attorney General's Office, Boston, MA, for Respondent.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

## I. INTRODUCTION

Tony Gaskins seeks a writ of habeas corpus from his conviction of murder in the first degree, contending that:

A. The prosecutor knowingly and intentionally used perjured testimony,

B. The prosecutor improperly vouched for a witness's testimony,

C. The jury instructions on malice were improper,

D. It was error for the trial judge to refuse to instruct on second degree felony murder,

E. The Supreme Judicial Court erroneously relieved the trial court's misdirection on the question of second degree felony murder by implicating the alternative theory of deliberate premeditation for which there was insufficient evidence,

F. He is actually innocent,

G. It was error for the trial judge to admit codefendants' plea agreements into evidence without curative instructions,

H. Trial counsel was ineffective for failing to move to strike the jury pool and venire,

I. Appellate counsel was ineffective,

J. Defense counsel was ineffective for failing to interview, investigate and call alleged exculpatory witnesses,

K. Defense counsel was ineffective for failing to act when inadmissible hearsay statements were admitted into evidence.

*See* Petition for Habeas Corpus ("Petition") [Doc. No. 1] at ¶ 12.

A. FACTS

The Supreme Judicial Court's recitation of the facts is succinct:

The jury could have found the following from the evidence. [Raymond] Coffill and [Leo] Womack had had a general plan in February, 1991, to rob a "drug house." On February 15, 1991, Coffill purchased cocaine from a drug house in Lynn and shared it with Womack. Later that day they went to the drug house to purchase more cocaine, but because they were short of funds, they were unable to make a purchase. As they were leaving, they met [Gaskins] and Robert Reid. The four pooled their resources, purchased cocaine, and went to Coffill's house where they discovered that the cocaine was of poor quality. There followed a loosely developed plan to rob the drug house. They returned to the drug house. Coffill and [Gaskins] knocked on the door, had an argument with the people inside about the poor quality of the cocaine, but failed to obtain any satisfaction. The four then consulted and decided that they would try to disrupt the business of the drug house. Two people were allowed to make purchases without incident. The victim then arrived alone. He apparently made a drug purchase, and, as he was leaving, Womack grabbed him and struck him on the head. [Gaskins] held a knife to the victim's body and told the victim, "Kick it in." The victim begged that they not stab him for a "twenty." The victim struggled and fled, pursued by [Gaskins], Womack, and Reid on foot and Coffill in an automobile. Ultimately, the four joined up in the automobile. [Gaskins] said "I stuck that nigger. He didn't make the fence. I got him." [Gaskins] still had the knife. The victim died one week later as a result of a stab wound to his abdomen.

*Commonwealth v. Gaskins*, 419 Mass. 809, 810–11, 647 N.E.2d 429 (1995).

Coffill and Womack testified at the trial, each in exchange for an agreement that the charge against him for murdering the victim would be reduced to manslaughter and the prosecution would make a specific recommendation concerning the term of his incarceration: five to seven years for

Coffill; fifteen to twenty for Womack. *Id.* at 810 & n. 1, 647 N.E.2d 429.

## B. PROCEDURAL HISTORY

Gaskins was convicted in February 1992, and thereafter appealed to the Massachusetts Supreme Judicial Court pursuant to Massachusetts General Laws c. 278, § 33E. He asserted in his direct appeal several of the claims now before this Court—D, H, J and K above—as well a challenge to the trial judge's denial of his motion for a required finding of not guilty. *Commonwealth v. Gaskins,* 419 Mass. 809, 810, 647 N.E.2d 429 (1995). The Supreme Judicial Court affirmed Gaskins' conviction on March 31, 1995. *Id.* at 814, 647 N.E.2d 429.

Gaskins then, on March 5, 1997, filed in the Superior Court sitting in and for the County of Essex a motion for a new trial, asserting the same arguments made in his direct appeal as well as several new arguments. *See* Gaskin's March 1997 New Trial Motion in Respondent's Supplemental Answer ("Supp. Answer") [Doc. No. 26], Vol. II, Ex. O at C.1–C.48. The new arguments included those raised in the instant petition as claims B, G and I, above. *See id.;* Petition at ¶ 12. On May 8, 1997, the motion judge ruled that "all of the issues now raised by the defendant in this motion for a new trial have either been previously raised and ruled upon on direct appeal, or have been waived." *See* Memorandum Regarding Motion for New Trial in Supp. Answer, Vol. II, Ex. O at F.5.

On May 30, 1997, Gaskins sought leave to appeal from a single justice of the Su-

preme Judicial Court, attaching a copy of the denial of his motion.[1] *See* May 1997 Motion for Leave to Appeal in Supp. Answer, Vol. II, Ex. O. at G.1–G.12. The single justice denied his request in a one-line order: "The defendant's application pursuant to G.L. c. 278, s. 33E, for leave to appeal from the denial of defendant's motion for new trial, is denied." *Id.* Ex. O at H.

Gaskins later filed two additional motions for a new trial, both raising the jury pool composition issue. Both were rejected. *See* Supp. Answer, Vol. II, Ex. O at I, J. On July 10, 1998, Gaskins sought leave to appeal the denial of his third motion for a new trial. *See* July 1998 motion for leave to appeal in Supp. Answer, Vol. II, Ex. M. He asserted only one claim in his application—that the composition of the jury pool should have been challenged by his counsel. *Id.* On January 22, 1999, a single justice of the Supreme Judicial Court denied the request. *Id.* at Ex. Q.

While these proceedings were ongoing in the courts of the Commonwealth, Gaskins, on July 2, 1997, filed his first petition for a writ of habeas corpus in this Court. *See* Docket Sheet in Supp. Answer, Vol. 1, Ex. E. The Court dismissed it in 2000 as unexhausted, ruling that one of the claims presented in the petition, the prosecutorial misconduct claim, was materially broader than when originally presented in the courts of the Commonwealth and was supported by new evidence—an affidavit by a key witness (Womack) stating that he was coerced by the prosecutor to give false testimony. *See Gaskins v. Duval,* 89 F.Supp.2d 139, 142 (D.Mass.2000).[2]

---

1. Massachusetts General Laws chapter 278, section 33E provides, in relevant part: "If any motion [for a new trial] is filed in the superior court after rescript [by the supreme judicial court], no appeal shall lie from the decision of that court upon such motion unless the appeal is allowed by a single justice of

the supreme judicial court on the ground that it presents a new and substantial question which ought to be determined by the full court."

2. The Court first dismissed the petition as time-barred. *See Gaskins v. Duval,* 89 F.Supp.2d 139, 141 (D.Mass.2000). Gaskins

Gaskins later, on October 18, 2004, filed the instant petition along with a motion to stay. Petition [Doc. No. 3]; Motion to Stay [Doc. No. 1]. On November 2, 2004, the Court stayed the petition and administratively closed the case to allow Gaskins to return to the courts of the Commonwealth to exhaust his claims.

In April 2000, Gaskins filed another motion for a new trial in the Superior Court, submitting new evidence pertaining to the alleged perjured testimony and arguing that he was actually innocent and that the jury instructions on malice were incorrect. See Gaskins' 2008 Petition for Leave to Appeal in Supp. Answer, Vol. III, Ex. S, at 3. On July 12, 2002, a Justice in the Superior Court denied the motion in part, but allowed an evidentiary hearing on the prosecutorial misconduct issue and argument on the erroneous third prong malice issue. See Excerpt from Ruling in Supp. Answer, Vol. III, Ex. U at 0000235–0000239. After holding an evidentiary hearing and considering the testimony of Womack's trial attorney and an affidavit from the prosecutor, and noting Womack's refusal to testify at the evidentiary hearing, the motion judge, on February 26, 2008, found Womack's affidavit not credible and denied the motion for a new trial. See February 2008 Ruling in Supp. Answer, Vol. III, Ex. U at 0000263.

Gaskins again sought leave to appeal, see March 2008 Petition for Leave to Appeal in Supp. Answer, Vol. III, Ex. S, and again was denied. See August 2008 Single Justice Ruling in Supp. Answer, Vol. III, Ex. W. The Single Justice concluded that the issues pertaining to the instructions on malice, the destruction of exculpatory evidence, and the ineffectiveness of counsel were not new or substantial, and that the

issue pertaining to prosecutorial misconduct was new but not substantial. Id.

On August 20, 2008, this Court granted Gaskins' motion to remove the stay on his petition for habeas corpus and restored the case to the docket. The Respondent filed a motion to dismiss on October 2, 2008 [Doc. No. 18], arguing that the limitations period had run and that Gaskin had failed to establish circumstances warranting the application of the equitable tolling doctrine. See Respondent's Mem. in Support Mtn. to Dismiss [Doc. NO. 19] at 1–2. The Court denied the motion on November 24, 2008.

On February 17, 2009, the Respondent submitted its answer [Doc. No. 25] and a motion for judgment on the pleadings [Doc. No. 28], supported by a memorandum of law. See Respondent's Mem. in Support Mtn. Judg. on Pleadings ("Resp. Mem. Judg. Pleadings") [Doc. No. 28]. It argued that the petition should be dismissed because Gaskin had not exhausted claims B, E, G, I, and J. See Answer [Doc. No. 25] at 10; Resp. Mem. at 5. Gaskins opposed the motion. See Gaskins Mem. in Opposition ("Gaskins Opp'n") [Doc. No. 31]. At a hearing on April 15, 2009, the Court denied the Respondent's motion, reserved the exhaustion issue, and ordered briefing on the merits.

Gaskins submitted his memorandum in support of his petition on June 9, 2009 ("Gaskins' Mem.") [Doc. No. 37], and a "Second Supplemental Memorandum" on June 15, 2009 [Doc. No. 40]. He subsequently moved for discovery [Doc. No. 38] and an evidentiary hearing [Doc. No. 39]. The Court denied the motion for discovery, and denied the motion for an evidentiary hearing without prejudice to the Court's

appealed, and the First Circuit vacated the order of dismissal. Id. The dismissal for lack of exhaustion occurred on remand. Id.

reconsidering the issue upon review of Gaskins' merits brief. The Respondent submitted an opposition to Gaskins' petition on July 1, 2009. ("Resp. Opp'n") [Doc. No. 43].

## II. ANALYSIS

■ Before this Court may consider any of Gaskins' claims on their merits, it must conclude that all are exhausted. *See* 28 U.S.C. § 2254(b)(1)(a); *Rhines v. Weber,* 544 U.S. 269, 273, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005) ("federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims"). In his motion for judgment on the pleadings, the Respondent contended that Claims B, E, G, I, and J are not, *see* Resp. Mem. Judg. Pleadings at 5, and at the hearing on the motion, this Court reserved the issue. The Court now concludes that all are exhausted. For the sake of clarity, however, rather than discussing the exhaustion issue separately, the Court will explain its ruling in the following discussion of the merits of each claim.

### A. Claims B, G, and I.[3]

■ The Respondent contends that Claims B, G, and I are unexhausted as well as procedurally defaulted. *See* Resp. Opp'n at 16–17. With respect to exhaustion, the Court is not persuaded. The claims were presented in Gaskins' 1997 motion for a new trial and subsequent petition to the single justice for leave to appeal. While the single justice denied the petition (a ruling that was "final and unreviewable," *Commonwealth v. Herbert,* 445 Mass. 1018, 1018, 838 N.E.2d 1236 (2005)), there is no question but that the claims were presented in the courts of the Commonwealth. *See* Supp. Answer, Vol. II, Ex. O at C.1–C.48; Supp. Answer, Vol. II, Ex. O. at G.1–G.12. The Respondent appears to have overlooked these filings.

■ Although the claims are exhausted, this Court may not consider them on the merits because they are procedurally defaulted. "It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell,* —— U.S. ——, 129 S.Ct. 1769, 1780, 173 L.Ed.2d 701 (2009) (quoting *Coleman v. Thompson,* 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). For example, "[w]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Id.*

■ As noted above, Gaskins raised claims B, G, and I in his 1997 motion for a new trial. The motion judge rejected them, ruling that they, and the other

---

3. Claim B asserts that the prosecutor improperly vouched for a witness's credibility. See Petition ¶ 12; Gaskins' Mem. [Doc. No. 37 Attach. 1] at 44–47. During closing argument, the prosecutor stated that the witness, Leo Womack, "exhibited a certain slowness of wit" and "wouldn't be able to tell you a lie without letting on." Trial Tr. Vol. 4 at 4:56 (February 27, 1992).

Claim G asserts that it was error for the trial judge to admit codefendants' plea agreements into evidence without curative instructions. Petition ¶ 12; Gaskins' Mem. [Doc. No. 37 Attach. 3] at 77–82.

Claim I asserts that appellate counsel that handled the direct appeal was ineffective for failing to file a motion for a new trial to challenge the composition of the jury before raising the issue before the Supreme Judicial Court. Petition ¶ 12; Gaskins' Mem. [Doc. No. 37 Attach. 3] at 87–89.

claims raised, either had been previously addressed or had been waived. *See* 1997 Ruling in Supp. Answer, Vol. II, at F.1–F.5. A single justice subsequently denied Gaskins' request for leave to appeal with a one-line order: "The defendant's application pursuant to G.L. c. 278, s. 33E, for leave to appeal from the denial of defendant's motion for new trial, is denied." Supp. Answer, Vol. II, Ex. O at H. Typically the Court must examine the opinion of the single justice to determine whether it rests on procedural grounds. *See Coleman*, 501 U.S. at 739, 111 S.Ct. 2546. While there is little to examine here, there can be no doubt given the express finding of waiver by the motion judge but that the single justice's denial of review was based on procedural waiver below. *See Simpson v. Matesanz*, 175 F.3d 200, 206 (1st Cir. 1999) ("Where there has been procedural waiver below, the denial of review under [Mass. Gen. Laws c. 278,] § 33E is an independent and adequate state ground that bars federal habeas review.").

This Court therefore concludes that Jackson's claim is in procedural default and that federal habeas review is barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. Gaskins has made no attempt to show cause and prejudice and, as discussed in Claims C and F, below, the Court is not persuaded by his miscarriage of justice argument.

### B. Claim A

As noted above, in 2000, this Court dismissed Gaskins' first petition for habeas corpus, ruling that the claim of prosecutorial misconduct was unexhausted because an affidavit included in support of the claim was never presented to the courts of the Commonwealth. *See Gaskins v. Duval*, 89 F.Supp.2d at 141–42. In that affidavit, signed in October 1999, Womack recanted his testimony and averred that a prosecutor coerced him into testifying falsely at Gaskins' trial. *See* Womack Affidavit [Doc. No. 37 Attach. 4 at Aooo21] ¶ 4. After this Court's ruling, Gaskins returned to the Massachusetts Superior Court with a motion for a new trial, supported by Womack's affidavit. *See* Gaskins' 2008 Petition for Leave to Appeal in Supp. Answer, Vol. III, Ex. S, at 3. A Justice allowed an evidentiary hearing on the issue. When Womack sought to assert his Fifth Amendment privilege, claiming that he had not voluntarily signed the affidavit, the judge found him not credible and concluded that Womack had waived his privilege with respect to the issues raised in the affidavit. *See* Excerpt from Ruling in Supp. Answer, Vol. III, Ex. U at Ex. M at 0000243–0000251. The judge subsequently held an evidentiary hearing at which Womack refused to testify. After considering statements by Womack's trial attorney and an affidavit submitted by the prosecutor, both pertaining to the only meeting between Womack and the prosecutor, the judge found Womack's affidavit not credible and denied the motion for a new trial. *See* February 2008 Ruling in Supp. Answer, Vol. III, Ex. U at 0000263–0000274. He further rejected Gaskins' request for relief from Womack's refusal to testify. *Id.* at 0000272–73. When Gaskins' sought leave to appeal, the single justice concluded that the issue was new but not substantial. *See* August 2008 Single Justice Ruling in Supp. Answer, Vol. III, Ex. W at 2–3.

■ Gaskins now claims, as he did in his motion for a new trial, that the use of Womack's testimony deprived him of his right to due process, a fair trial, and to

confront the witnesses against him. *See* Gaskins' Mem. at 23–47; Second Supplemental Mem. at 7–16. To prevail, he must demonstrate that the ruling by the single justice (which essentially adopted the analysis of the motion judge) was contrary to or an unreasonable application of clearly established Federal law, or that it stemmed from an unreasonable determination of facts. 28 U.S.C. § 2254(d). He has accomplished neither.

The obstacle for Gaskins is that the motion judge's finding that Womack's affidavit is not credible is "presumed to be correct" unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Gaskins has failed this rebuttal burden, submitting *no* evidence that Womack's testimony was false and coerced. Because there is no credible evidence that Womack's testimony was perjured, the courts of the Commonwealth did not unreasonably apply *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

■ Gaskins further contends that the Commonwealth intentionally destroyed exculpatory evidence when, during the interrogation of Womack, police officers ripped up earlier versions of his written statement to them. *See* Second Supplemental Mem. at 12–13. The motion judge rejected this argument, concluding that even were the court to credit Womack's allegations, which it did not, the additional evidence would not have created reasonable doubt in the minds of the jurors. *See*

February 2008 Ruling at 0000267–68. The judge emphasized that Womack had testified at the trial that the police had destroyed his earlier statements, and from that the jury could have inferred that the police did so because they were unsatisfied with their content. *Id.* While the Respondent did not address this issue, this Court concludes that it is procedurally defaulted: in denying Gaskins' petition for leave to appeal, the single justice ruled that the issue was not new. *See* August 2008 Single Justice Ruling in Supp. Answer, Vol. III, Ex. W at 1–2.

This Court's June 16, 2009 denial of Gaskins' request for an evidentiary hearing on this issue stands; Gaskins does not satisfy the requirements set forth in 28 U.S.C. § 2254(e)(2).[4]

**C. Claims C and F**

■ Gaskins contends that the jury instructions on malice incorrectly permitted an inference of malice on less than a plain and strong likelihood of death. *See* Petition ¶ 12, Ground C; Gaskins' Mem. [Doc. No. 47 Attach. 1 and 2] at 47–59. He did not object to this instruction during the trial, and instead raised this issue for the first time in his April 2000 motion for a new trial. *See* April 2000 Motion for a New Trial in Supp. Answer, Vol. III, Ex. U, at 0000061, 0000137. The motion judge denied his motion, and Gaskins sought leave to appeal from a single justice. The single justice ruled, with respect to this

---

4. Title 28 U.S.C. § 2254(e)(2) provides:
   (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
   (A) the claim relies on—
   (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
   (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

claim, that it was not new or substantial. *See* 2008 Single Justice Ruling in Supp. Answer, Vol. III, at W. The Respondent contends that the claim is therefore procedurally barred, and, as with Claims B, G, and I, above, this Court agrees. Resp. Opp'n at 12–15. *See Simpson,* 175 F.3d at 206.

■ Gaskins has not set forth any grounds for cause and prejudice. Instead he contends that the Court should overlook his procedural default and consider the constitutional claim on the merits because failure to do so would result in a fundamental miscarriage of justice. Gaskins' Mem. [Doc. No. 37 Attach. 2] at 59. .

Gaskins relies heavily on *Commonwealth v. Azar,* 50 Mass.App.Ct. 767, 742 N.E.2d 1083 (2001), a case involving third prong malice instructions that taught a jury, wrongly, that the malice element could be satisfied by an act creating a strong likelihood of grievous bodily harm. *Id.* at 768, 742 N.E.2d 1083. After a defendant was convicted of the second degree murder of his infant daughter by skull fracture, the Appeals Court concluded that a new trial was constitutionally required because the evidence permitted, but did not require, the jurors to conclude that there was a plain and strong likelihood that death (and not just harm) would result from the defendant's actions. *Id.* at 777–78, 742 N.E.2d 1083.

Similarly, here, the instructions on third prong malice were incorrect. *See* Trial Tr. Vol. 4 at 86 (February 27, 1992).[5] That, however, is where the cases part ways. First, *Azar* did not involve the fundamental miscarriage of justice standard. Instead, it was an appeal from the denial of a motion for a new trial in a second degree murder case, and therefore not governed by section 33E; the standard of review at the Appeals Court was whether the error created a substantial risk of a miscarriage of justice. *See Azar,* 50 Mass.App.Ct. at 771, 742 N.E.2d 1083.

Here, in contrast, where Gaskins did not raise the issue until after his direct appeal, the standard was more formidable. *See* Joseph Nolan & Charlene Caldeira, 41 Massachusetts Practice Series § 5:1 (2d ed.) (explaining that in a first degree murder case, "after the Supreme Judicial Court has considered the appeal under § 33E, a motion for new trial faces an uphill struggle."). During Gaskins' direct appeal, the Supreme Judicial Court reviewed the entire trial record, searching for any constitutional deficiencies, even those not raised by him. After that initial, expansive review, however, in order to get before the full court he had to show that an issue was new and substantial. It's an exacting standard, which he failed.

■ More significant, however, is that *Azar* did not involve a review by a federal court of a procedurally defaulted claim pursuant to the fundamental miscarriage of justice standard, "a narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence." *Burks v. Dubois,* 55 F.3d 712, 717 (1st Cir.1995). This "extraordinary relief," *id.* at 718, is warranted where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). As the Supreme Court has explained, "[w]ithout any new evidence of innocence, even the existence

---

**5.** The judge instructed the jury as follows: "You may draw the inference of malice ... only if the defendant used such force that, according to common experience, there was a plain and strong likelihood that death or grievous harm would follow the defendant's blow." *Id.*

of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In this case, Gaskins has raised a separate claim of actual innocence in Claim F, *see* Petition ¶ 12; Gaskins' Mem. [Doc. No. 27 Attach. 2 and 3] at 73–76, and the Court will address both claims here.

To support his claim of actual innocence, Gaskins relies on the Womack affidavit, addressed in Claim A above, arguing that it "establishes sufficient doubt about his guilt and justifies the conclusion that his continued incarceration on the murder charge would be a miscarriage of justice." Gaskins' Mem. [Doc. No. 37 Attach. 2] at 75. He contends that "[t]here was no physical evidence or forensic evidence connecting [him] to the crime," and that "[t]he only evidence was through two confessed accomplices, now known to be liars." *Id.* [Doc. No. 37 Attach. 3] at 76. To the contrary, there *was* physical evidence presented at trial, as Gaskins sets forth in his memorandum, *see* Gaskins' Mem. at 73–74, and Womack's affidavit has been found not credible. This is not such an "extraordinary case" as to permit this Court to excuse Gaskins' procedural default. *Murray*, 477 U.S. at 496, 106 S.Ct. 2639.

### D. Claim D

■ Ground D of the petition claims that the judge's refusal to instruct on second degree felony murder negated his earlier instruction that the jury must determine the degree of murder, and thereby deprived Gaskins of a fair trial. Gaskins did not object to the instructions at trial, and raised the issue only later on direct appeal. *See Gaskins*, 419 Mass. at 812–13, 647 N.E.2d 429. The Supreme Judicial Court therefore reviewed it pursuant to

the likelihood of a miscarriage of justice standard. *Id.*

The Respondent properly relies on *Lynch v. Ficco*, 438 F.3d 35, 45 (1st Cir. 2006), where the First Circuit explained that "limited review of this sort 'does not work a waiver of the contemporaneous objection requirement.'" Rather, the decision is based on an independent and adequate ground so long as the state court "consistently applies its contemporaneous objection rule and has not waived it in the particular case by basing the decision on some other ground." *Id.* (quoting *Horton v. Allen*, 370 F.3d 75, 80–81 (1st Cir.2004)). There can be no question but that the Supreme Judicial Court consistently enforces the rule that unpreserved claims are forfeited and that it did not waive that rule in this case. The claim has been procedurally defaulted unless Gaskins can show cause and prejudice or that the petition falls into the "fundamental miscarriage of justice" category. He has not attempted to do the former, and for the latter he points to the same portion of his brief that addressed the claim pertaining to the instruction on malice, discussed above. *See* Second Supplemental Mem. [Doc. No. 40] at 17 & n. 16. For the reasons above, the Court is not persuaded.

### E. Claim E

■ Claim E asserts that the Supreme Judicial Court "erroneously relieved the trial court's misdirection on the question of second degree felony murder by implicating the alternative theory of deliberate premeditation for which there was insufficient evidence." Petition at 6(a). The Court first resolves the open question of whether Claim E is exhausted. In support of his position that it is, Gaskins argues that the claim "is another way of describing the problems with the felony murder instructions" that were raised in his direct

appeal and post-conviction proceedings and are raised again here in Claim D. While this assertion lacks clarity and persuasive value, the Court agrees that the claim is exhausted.

Review of Gaskins' memorandum in support of his petition, *see* Gaskins' Mem. at 63, reveals that this claim pertains to the following footnote in the Supreme Judicial Court's discussion of the trial court's felony murder instructions: "The fact that the jury's verdict was also based on a finding of deliberate premeditation greatly reduces the possibility of any prejudicial error in the charge on felony-murder." *Gaskins*, 419 Mass. at 813 n. 4, 647 N.E.2d 429. He appears to be challenging the sufficiency of the verdict of premeditated murder in the first degree. On direct appeal, the Supreme Judicial Court rejected this challenge, concluding that the evidence "warranted a finding that the defendant was guilty of premeditated murder in the first degree." *Id.* at 811, 647 N.E.2d 429. The courts of the Commonwealth therefore had the opportunity to consider the claim, and it is exhausted. Thus, the Court rejects the Respondent's contention that Claim E is procedurally barred because it "could have been raised earlier." Resp. Opp'n at 17.

The question for the Court, therefore, is whether the Supreme Judicial Court unreasonably ruled that there was sufficient evidence to support a verdict of premeditated murder. This Court concludes that it did not: as the Supreme Judicial Court pointed out, the jury could have found that Gaskins chased the fleeing victim before stabbing him. *See Gaskins*, 419 Mass. at 810–11, 647 N.E.2d 429.

### F.   Claim H

Claim H asserts that Gaskins was deprived of effective assistance of counsel when his trial counsel failed to challenge the composition of the jury pool.[6] *See* Petition ¶ 12; Gaskins' Mem. [Doc. 37 Attach. 3] at 83–87. The Respondent concedes the issue was presented on direct appeal and thus is exhausted, *see* Resp. Mem. Judg. Pleadings at 8, but contends that the Supreme Judicial Court's resolution of the claim was reasonable. Resp. Opp'n at 27–28.

Relying on *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979) and *Commonwealth v. Pope*, 392 Mass. 493, 500, 467 N.E.2d 117 (1984), the Supreme Judicial Court observed that the "essential data on which such a claim must be based do not appear on the record, nor is there any showing that any underrepresentation of a distinctive group was due to systematic exclusion of that group in the jury selection process." *Gaskins*, 419 Mass. at 814, 647 N.E.2d 429. Essentially, the court concluded that Gaskins had failed to provide any record support for the claim, a ruling that is not unreasonable.

Because such claims typically cannot be decided on the trial record alone, the courts of the Commonwealth "strongly disfavor raising claims of ineffective assistance on direct appeal." *Commonwealth v. Zinser*, 446 Mass. 807, 811, 847 N.E.2d 1095 (2006); *see also Commonwealth v. Keon K.*, 70 Mass.App.Ct. 568, 573–574, 875 N.E.2d 498 (2007) ("A claim of ineffective assistance of counsel should only be brought on direct appeal when the factual basis of the claim appears indisputably on

---

**6.**   In his Second Supplemental Memorandum, Gaskins frames this issue as a deprivation of the underlying rights to due process, equal protection and a fair trial by a jury of his peers, rather than as an ineffective assistance of counsel claim. *See* Second Supplemental Mem. [Doc. No. 40] at 17 & n. 18.

the trial record-that is, where the issues do not implicate any factual questions more appropriately resolved by a trial judge."). Recognizing this, Gaskins separately claims that appellate counsel was ineffective for failing to file a motion for a new trial before raising the issue in the Supreme Judicial Court. *See* discussion of Claim I, *supra.* As discussed above, however, that claim is procedurally defaulted.

### G. Claim J

■ Claim J asserts that Gaskins was deprived of effective assistance of counsel because his trial counsel failed to interview, investigate and call certain exculpatory witnesses. *See* Gaskins' Mem. at 90–94. These witnesses allegedly would have testified that the victim told them that the abdomen wound that later killed him occurred when he fell on a broken bed, which of course was contrary to the prosecution's theory that Gaskins stabbed the victim. This issue was addressed in part by the Supreme Judicial Court on direct appeal. *See Gaskins,* 419 Mass. at 814, 647 N.E.2d 429. There, Gaskins argued that his trial counsel was ineffective because he (counsel) failed to offer evidence that the victim told his girlfriend and a police officer that he obtained the wound when he fell on a bed. Here, Gaskins argues that defense counsel was ineffective because he furthermore failed to investigate the case thoroughly and identify additional exculpatory witnesses who heard the same statements by the victim. In addition to raising the issue in part on direct appeal, Gaskins challenged the effectiveness of trial counsel in his 1997 motion for a new trial and subsequent motion for leave to appeal. As with claims B, G, and I, above, it is exhausted.

■ While Gaskins prevails on the exhaustion issue, he has not met his burden to show that the Supreme Judicial Court unreasonably applied the law of the Supreme Court when it concluded that "[d]efense counsel could have reasonably concluded that it would be better to assert that one of the two men who testified against the defendant had stabbed the victim and to ignore the inconsistent theory, improbable in light of the medical and other evidence, that the victim had not been stabbed at all."[7] *Gaskins,* 419 Mass. at 814, 647 N.E.2d 429. The Supreme Judicial Court failed to provide any case support for that conclusion, but earlier in its opinion it explained: "Because our review of this appeal is governed by G.L. c. 278, § 33E (1992 ed.), the claim of ineffective assistance of counsel is properly reviewed on the standard whether there is a substantial likelihood of a miscarriage of justice. *See Commonwealth v. Wright,* 411 Mass. 678, 682 [584 N.E.2d 621] (1992)." *Gaskins,* 419 Mass. at 812 n. 3, 647 N.E.2d 429. As the Respondent points out, the "*Wright* standard is at least as generous to the petitioner as the federal ineffective assistance of counsel standard." Resp. Opp'n at 27. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Gaskins relies on a Seventh Circuit decision, *Crisp v. Duckworth,* 743 F.2d 580 (7th Cir.1984), where a defendant's counsel chose not to interview witnesses to the crime because he already had reviewed their police statements and wanted them to be nervous during cross-examination at trial. While that court concluded that the counsel's performance was deficient, there is an obvious distinction between the cases: here, the allegation is that counsel failed to develop one aspect of his own case, not

---

7. Defense counsel did not ignore the theory entirely—he sought to introduce the statements through the victim's girlfriend, but the testimony was excluded.

that he failed to prepare for the prosecution's listed witnesses.

This does not excuse Gaskins' counsel, for "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052. Therein lies a weakness in the Supreme Judicial Court's analysis: it implies that counsel need not pursue alternate theories of defense. To the contrary, "[a] tactical decision to pursue one defense does not excuse failure to present another defense that 'would bolster rather than detract from [the primary defense].'" *Dugas v. Coplan,* 428 F.3d 317, 331 (1st Cir.2005) (quoting *Foster v. Lockhart,* 9 F.3d 722, 726 (8th Cir.1993)).

In *Dugas,* a defendant was on trial for arson, and, rather than investigating a "non-arson" defense (including consulting an arson expert), his counsel focused solely on an identification defense. *Id.* The court concluded that the counsel's assistance was constitutionally deficient. *Id.* at 329. While this case similarly involves an attempt by counsel to point a finger at someone else rather than challenge the cause of the injury, the comparison is weak for the following reason: the *Dugas* court was offended in particular by the counsel's failure to consult an expert, not at issue here. Given the "heavy measure of deference to counsel's judgments," *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052, this Court concludes that counsel's failure to interview witnesses who merely could corroborate the broken bed theory, a theory in support of which counsel already possessed evidence and one that in his professional judgment was weak, was not ineffective assistance.[8]

### H. Claim K

■■ The Respondent concedes that the final claim—that Gaskins was deprived of effective assistance of counsel when counsel failed to move to strike inadmissible hearsay statements by prosecution witnesses—was raised on direct appeal to the Supreme Judicial Court and is exhausted. *See* Resp. Mem. Judg. Pleadings at 8. The question for the Court, therefore, is whether the Supreme Judicial Court unreasonably applied the law of the Supreme Court when it concluded that "there was no ineffective assistance of counsel in the way in which defense counsel dealt with admission of evidence from the joint venturers." *Gaskins,* 419 Mass. at 812, 647 N.E.2d 429.

Gaskins contends that the testimony of Womack and Coffill was inadmissible hearsay because the Commonwealth failed to prove that a joint venture existed, and therefore that trial counsel should have moved for a mistrial or to strike the testimony. *See* Gaskins' Mem. [Doc. No. 37 Attach. 3] at 95–101. As the Respondent points out, however, the judge's refusal to instruct the jury on joint venture was not based on a finding that the Commonwealth failed its burden. *See* Resp. Opp'n at 29. As the Supreme Judicial Court explained, the judge did not instruct on joint venture "because in his view the evidence warranted the conclusion that only the defendant among the joint venturers could have stabbed the victim." *Gaskins,* 419 Mass. at 812, 647 N.E.2d 429. The judge made no finding with respect to the Commonwealth meeting its burden, but on review, the Supreme Judicial Court concluded that "there was ample evidence of a joint venture to rob the victim." *Id.*

---

**8.** Furthermore, the Supreme Judicial Court is likely correct that the victim's statements would not have been admissible as dying declarations because there was no evidence that the victim believed that death was imminent. *Gaskins,* 419 Mass. at 814, 647 N.E.2d 429. Therefore, the failure to further investigate the broken bed theory was not prejudicial.

Furthermore, the Supreme Judicial Court explained that Gaskins' entire argument rested on the faulty premise that the testimony was admissible only if there was a joint venture. To the contrary, the court concluded, Womack's and Coffill's testimony "concerning what was said and done when they and the defendant confronted the victim and immediately thereafter was largely admissible quite apart from any theory of its admissibility as hearsay statements of joint venturers." *Id.* at 811, 647 N.E.2d 429. Because the failure to file a motion that would have been futile is not ineffective assistance, the Court rejects Claim K. *See Commonwealth v. Morales,* 440 Mass. 536, 549–50, 800 N.E.2d 683 (2003) (concluding that failure to move for a mistrial after inadvertent editorializing by a witness is not ineffective assistance).

## I. Constitutionality of AEDPA

Finally, Gaskins contends that the Antiterrorism Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, is unconstitutional and his petition should be reviewed under the more lenient pre-AEDPA de novo standard. *See* Second Supplemental Mem. [Doc. No. 40] at 18. The First Circuit, however, rejected this argument in 2008, *see Evans v. Thompson,* 518 F.3d 1, 6–9 (1st Cir.2008), and this Court is bound by that ruling.

## III. CONCLUSION

For the reasons above, Gaskins' petition for habeas corpus [Doc. No. 3] is DENIED.

SO ORDERED.