## COMMONWEALTH *vs.* TONY B. GASKINS.

Essex. February 8, 1995. - March 31, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Homicide. Practice, Criminal,* Required finding, Assistance of counsel, Instructions to jury, Jury and jurors, Capital case. *Joint Enterprise. Felony-Murder Rule. Constitutional Law,* Assistance of counsel. *Jury and Jurors. Evidence,* Dying declaration.

At a murder trial there was no error in the judge's denial of the defendant's motion for a required finding of not guilty. [811]

At the trial of a defendant for murder, there was ample evidence of a joint venture to rob the victim, but the judge properly did not charge on joint venture where the evidence warranted the conclusion that only the defendant among the joint venturers could have stabbed the victim [811-812]; and no substantial risk of a miscarriage of justice was demonstrated by the way defense counsel dealt with the admission of evidence from the joint venturers [812].

At the trial of a murder indictment on the theory of felony-murder there was no likelihood of a miscarriage of justice in the judge's statement to the jury that, on the evidence, the felony-murder rule did not permit a verdict of murder in the second degree, where the judge did not foreclose the jury from determining the degree of murder [812-813]; moreover, the jury's verdict of guilty based on deliberate premeditation reduced the possibility of any prejudicial error in the charge on felony-murder [813].

A criminal defendant did not demonstrate on the record of his trial that he was denied effective assistance of counsel, in the constitutional sense, because defense counsel did not challenge the composition of the juror pool pursuant to G. L. c. 234A, § 73 [813-814], or for counsel's failure to offer certain evidence, which would not have been admissible, as part of reasonable defense tactics [814].

INDICTMENT found and returned in the Superior Court Department on March 12, 1991.

The case was tried before *John L. Murphy, Jr.,* J.

*Rosemary Curran Scapicchio* for the defendant.

*S. Jane Haggerty*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant appeals from his conviction of murder in the first degree on the theories of deliberate premeditation and felony-murder. He argues that (1) the judge erred in denying his motion for a required finding of not guilty, (2) the jury instructions were defective concerning the possibility of a verdict of murder in the second degree, (3) the composition of the jury pool should have been challenged, and (4) defense counsel was ineffective in failing to offer certain allegedly exculpatory evidence. None of these arguments has merit. We see no reason to reduce the verdict or to grant a new trial pursuant to our responsibilities under G. L. c. 278, § 33E (1992 ed.).

The case against the defendant depended on the testimony of two men, Raymond Coffill and Leo Womack. Each had a criminal record and, at the time of trial, had a charge of murder pending against him for the death of the victim. Each testified in exchange for an agreement that (1) the charge against him for murdering the victim would be reduced to manslaughter and (2) the prosecution would make a specific recommendation concerning the term of his incarceration.[1]

The jury could have found the following from the evidence. Coffill and Womack had had a general plan in February, 1991, to rob a "drug house." On February 15, 1991, Coffill purchased cocaine from a drug house in Lynn and shared it with Womack. Later that day they went to the drug house to purchase more cocaine, but because they were short of funds, they were unable to make a purchase. As they were leaving, they met the defendant and Robert Reid. The four pooled their resources, purchased cocaine, and went to Coffill's house where they discovered that the cocaine was of poor quality. There followed a loosely developed plan to rob

---

[1]For Coffill, a term of from five to seven years. For Womack, whose involvement in the killing was more direct, a term of from fifteen to twenty years.

the drug house. They returned to the drug house. Coffill and the defendant knocked on the door, had an argument with the people inside about the poor quality of the cocaine, but failed to obtain any satisfaction. The four then consulted and decided that they would try to disrupt the business of the drug house. Two people were allowed to make purchases without incident. The victim then arrived alone. He apparently made a drug purchase, and, as he was leaving, Womack grabbed him and struck him on the head. The defendant held a knife to the victim's body and told the victim, "Kick it in." The victim begged that they not stab him for a "twenty." The victim struggled and fled, pursued by the defendant, Womack, and Reid on foot and Coffill in an automobile. Ultimately, the four joined up in the automobile. The defendant said "I stuck that nigger. He didn't make the fence. I got him." The defendant still had the knife. The victim died one week later as a result of a stab wound to his abdomen.

1. The judge did not err in denying the defendant's motion for a required finding of not guilty. The evidence just recited warranted a finding that the defendant was guilty of premeditated murder in the first degree. That circumstance alone supports the denial of the motion. Moreover, there was evidence that the killing occurred during the attempted commission of an armed robbery. Thus the judge properly gave the case to the jury on two theories of murder in the first degree: premeditation and felony-murder.

The defendant argues that certain statements of Coffill and Womack, the two participants who testified against him, were inadmissible hearsay and should not be considered in weighing the sufficiency of the evidence. The argument rests on the faulty premise that these statements were admissible only if there was a joint venture and that the Commonwealth failed to prove a joint venture. Witnesses' testimony, however, concerning what was said and done when they and the defendant confronted the victim and immediately thereafter was largely admissible quite apart from any theory of its admissibility as hearsay statements of joint venturers. In any

event, there was ample evidence of a joint venture to rob the victim.

The judge did not charge the jury on the theory of joint venture because in his view the evidence warranted the conclusion that only the defendant among the joint venturers could have stabbed the victim. The judge did not rule that there was no joint venture to rob the victim. A joint venture instruction was unnecessary in the circumstances. The defendant was not harmed, and to some degree may have been helped, by the absence of an instruction on joint venture.[2]

We add that there was no ineffective assistance of counsel in the way in which defense counsel dealt with admission of evidence from the joint venturers.[3]

2. There is no likelihood of a miscarriage of justice in the manner in which the judge gave the jury the option of returning a verdict of murder in the second degree. The judge declined to give an instruction on felony-murder in the second degree based on the commission of a felony not punishable by life imprisonment. The defendant does not point to evidence warranting a finding that the defendant committed some other felony, one not subject to a sentence of life imprisonment. If a felony is punishable by life imprisonment, as armed robbery is (G. L. c. 265, § 17 [1992 ed.]), a death that a defendant caused while committing the crime warrants only a conviction of murder in the first degree.

The defendant argues that the judge erred in telling the jury that "there is also a second degree murder by reason of the felony murder rule, but I am not going to instruct you on that because the evidence does not warrant it." The argument is that this instruction, which was not objected to below, in effect negated the judge's instruction (given much

---

[2]There was evidence that another participant in the attempted robbery had had a knife and, therefore, had the opportunity to stab the victim.

[3]Because our review of this appeal is governed by G. L. c. 278, § 33E (1992 ed.), the claim of ineffective assistance of counsel is properly reviewed on the standard whether there is a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992).

earlier in the charge and then repeated immediately before the instruction just quoted) that the statute (G. L. c. 265, § 1 [1992 ed.]) "says that the jury will determine the degree of murder."

A jury should be told that the degree of murder is for them to decide, even in a case in which the evidence would warrant a verdict only of felony-murder in the first degree. *Commonwealth* v. *Brown*, 392 Mass. 632, 644-645 (1984). The judge's instruction did not foreclose that possibility when he explained that, on the evidence, the felony-murder rule did not permit a verdict of murder in the second degree. The statute creates an unavoidable inconsistency because a jury's obligation to find a defendant guilty of the highest crime proved beyond a reasonable doubt may conflict with the stated power of the jury to decide the degree of murder. See *Commonwealth* v. *Dickerson*, 372 Mass. 783, 797 (1977); *id.* at 811 (Quirico, J., concurring).

The judge's reference to the jury's power to decide the degree of murder and at almost the same time telling them that the evidence did not warrant a guilty finding of second degree felony-murder was not wrong. Those statements tended to "impress on the jury that while they were empowered to return the lesser verdict, they had a duty to consider the evidence in light of the principles of law given to them by the judge." *Commonwealth* v. *Dickerson, supra* at 797.[4]

3. The defendant, who is African-American as was the victim, has not demonstrated on this record that he was denied the effective assistance of counsel, in the constitutional sense, because defense counsel did not challenge the composition of the juror pool, pursuant to G. L. c. 234A, § 73 (1992 ed.). The defendant asserts that the jury pool contained no African-American or minority jurors. The defendant made no proper pretrial attempt to make this point. Nor has he moved for a new trial or for a hearing on such a motion at which he

---

[4]The fact that the jury's verdict was also based on a finding of deliberate premeditation greatly reduces the possibility of any prejudicial error in the charge on felony-murder.

would seek to show that such a challenge to the jury pool might have accomplished something material for his defense. The essential data on which such a claim must be based do not appear on the record, nor is there any showing that any underrepresentation of a distinctive group was due to systematic exclusion of that group in the jury selection process. See *Duren* v. *Missouri*, 439 U.S. 357, 364 (1979); *Commonwealth* v. *Pope*, 392 Mass. 493, 500 (1984); *Commonwealth* v. *Bastarache*, 382 Mass. 86, 96-97, 101 (1980).

4. The defendant argues that defense counsel was remiss, in a constitutional sense, by failing to offer evidence that, after the victim was wounded, he told his girl friend and a police officer on separate occasions that he received his wound when he fell on his broken bed. Defense counsel tried to present that fact through the victim's girl friend, but, on objection, the evidence was excluded.[5] Defense counsel did not attempt to introduce the victim's statement when the police officer testified.

The victim's statements would not have been admissible as dying declarations because there was no evidence that would warrant the conclusion that, when he made them, the victim believed that he was facing imminent death. See *Commonwealth* v. *Key*, 381 Mass. 19, 22-25 (1980). Moreover, defense counsel can be fairly viewed as making a reasonable tactical choice not to pursue the point. Defense counsel could have reasonably concluded that it would be better to assert that one of the two men who testified against the defendant had stabbed the victim and to ignore the inconsistent theory, improbable in light of the medical and other evidence, that the victim had not been stabbed at all.

5. There is no basis for extending relief to the defendant under G. L. c. 278, § 33E.

*Judgment affirmed.*

---

[5]The transcript indicates that the victim's girl friend might not have testified that the victim made such a statement.