LEO WOMACK, petitioner. July 28, 2005. *Supreme Judicial Court,* Superintendence of inferior courts, Appeal from order of single justice. *Practice, Criminal,* Discovery. *Contempt.*

Leo Womack appeals from a judgment of a single justice of this court denying his petition for relief pursuant to G. L. c. 211, § 3. We affirm.

Womack, Tony Gaskins, and two others were indicted for murder. In exchange for having the charge against him reduced to manslaughter, Womack testified at Gaskins's trial that Gaskins had confessed to stabbing the victim. Gaskins was convicted of murder in the first degree. This court affirmed that conviction. *Commonwealth* v. *Gaskins*, 419 Mass. 809 (1995). Thereafter, Womack signed an affidavit averring that his testimony against Gaskins was false, and that Gaskins had never confessed to stabbing the victim. Based on that affidavit, Gaskins moved for a new trial. A judge in the Superior Court conducted a hearing on the motion. When Womack was called as a witness, he asserted his privilege against self-incrimination. The judge then held an in camera hearing to consider whether Womack had waived his privilege by admitting in his affidavit that he had lied at Gaskins's trial. At that hearing, Womack claimed he had been coerced to sign the affidavit. The judge disbelieved Womack, and, based in part on testimony from a notary public who witnessed Womack sign the affidavit, the judge concluded Womack signed it freely and voluntarily. The judge thus concluded that Womack waived his privilege against self-incrimination.

Womack challenged the judge's ruling through a G. L. c. 211, § 3, petition. The single justice denied the petition without a hearing.

The case is now before us pursuant to S.J.C. Rule 2:21, as amended, 434 Mass. 1301 (2001). Although Womack claims that, if compelled to testify in

connection with Gaskins's motion for a new trial, he will be irreparably harmed, he has an alternative to the exercise of this court's extraordinary superintendence power: if he wishes to continue to press the issue, he can appeal from any ensuing contempt order. See *Matter of a Grand Jury Subpoena*, 442 Mass. 1029 (2004); *Matter of a Grand Jury Subpoena*, 411 Mass. 489, 492-493 (1992). "Confining the right to get appellate review of discovery orders to cases where the party [or witness] against whom the order was directed cared enough to incur a sanction for contempt is a crude but serviceable method . . . of identifying the most burdensome discovery orders and in effect waiving the finality requirement for them." *Cronin* v. *Strayer*, 392 Mass. 525, 529 (1984), quoting *Marrese* v. *American Academy of Orthopaedic Surgeons*, 726 F.2d 1150, 1158 (7th Cir. 1984), rev'd on other grounds, 470 U.S. 373 (1985). Contrary to Womack's contention, the rationale underlying this approach — challenging discovery orders by first disobeying them and then appealing from subsequent contempt orders — is not confined to cases involving challenges to grand jury subpoenas. See *Cronin* v. *Strayer, supra* (in defamation, appeal from discovery order dismissed because such orders are interlocutory and not appealable; appeal from contempt order appropriate avenue for appellate review).

*Judgment affirmed.*

The case was submitted on the papers filed, accompanied by a memorandum of law.

*Chauncey B. Wood* for the plaintiff.