# United States Court of Appeals

## For the First Circuit

No. 08-1150

ROBERT PERKINS,

Petitioner, Appellant,

v.

LOIS RUSSO,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Lynch, Chief Judge,

Boudin and Stahl, Circuit Judges.

Robert Perkins on brief pro se.
Argie K. Shapiro, Assistant Attorney General, Criminal Bureau,
James J. Arguin, Assistant Attorney General, Criminal Bureau, and
Martha Coakley, Attorney General, on brief for respondent.

November 18, 2009

**BOUDIN, Circuit Judge.** Robert Perkins is currently serving a twenty-five-to-forty-year sentence in state prison for his conviction on charges related to the armed robbery, kidnapping and wounding of James Martin in 1993. Based on a certificate of appealability ("COA"), Perkins now appeals to this court from the district court's denial of his petition for a writ of habeas corpus.

Evidence offered by the state at Perkins' original trial indicated that Perkins and his brother Michael restrained and robbed Martin after Martin came to the Perkins' house to visit Perkins' sister Vanessa (Martin had earlier shown Vanessa a cash settlement of roughly $5,000 he had received the previous summer as the result of a car accident). Perkins and his brother then drove Martin to his parents' home where Martin also lived; restrained his parents and stole jewelry, cash, and other valuables from the residence; and finally drove Martin to a desolate stretch of road, where they shot him several times before fleeing.

Although wounded, Martin made his way to the steps of a nearby house, and the police were called. Once they arrived, the police asked Martin what had happened and who was involved. Martin initially hesitated before identifying his assailants, asking the police to protect his family; when the police agreed to do this, Martin identified Robert and Michael Perkins as the ones who had shot him. Martin was then transported by ambulance to a nearby

hospital, during which time he was accompanied by one of the responding officers. En route and at the hospital, Martin repeated his identification of Robert and Michael Perkins, and he later told police that a third person, Hassan Parham, was also involved in the crime.

The case went to trial in state court in February 1995. The prosecution relied principally on Martin's testimony including his identification of the Perkins brothers as the men who had kidnaped, robbed and shot him. No other witnesses testified against Perkins, and no identifiable fingerprints or other physical evidence was offered by the state. Although Martin's parents were robbed by the same individuals who kidnaped Martin, the assailants had put on masks by the time they entered the house and were not identifiable by Martin's parents.

At trial, the defendants challenged Martin's credibility. Martin admitted that he had sold drugs to Robert and Michael Perkins on multiple occasions, and in addition Martin had been arrested for trafficking cocaine and illegally possessing a firearm five days before the trial and also faced charges in connection with a March 1994 arrest for assault and battery with a dangerous weapon. The defendants suggested that he was testifying falsely so as to curry favorable treatment with respect to these charges; Martin denied this and, when questioned by the prosecutor, countered the suggestion as follows:

Q: At any time have you talked to any member of the district attorney's office in regards to any of your pending cases?

A: No, I haven't.

Q: In regards to the [1994] Cambridge [assault and battery] offense . . ., did you ever speak to anyone in the district attorney's office in regards to that particular case?

A: No.

Q: And, in regards to the case that you just recently have been charged with on January 20th of '95, have you ever spoken to anyone in the district attorney's office about that pending case or any --

A: No, I have not.

Q: Are you here to testify because you're required to or as a result of what happened to you on that day?

A: Yes, I am.

Q: And is there any other reason why you are here?

A: Yeah.

Q: Why?

A: Because he [Perkins] shot me and tried to kill me. That's why.

During redirect, Martin was again asked by the prosecutor whether "anyone [had] offered [him] any promises, rewards, or inducements" to testify, and he responded, "No."

At the trial's conclusion, the jury found Perkins and his brother Michael guilty on all counts but acquitted Parham, the third and later-identified co-defendant. Perkins' conviction was

-4-

affirmed on direct appeal in September 1997. <u>Commonwealth</u> v. <u>Perkins</u>, 684 N.E.2d 270 (Mass. App. Ct. 1997). He filed several post-conviction motions for a new trial in state court thereafter, each of which was denied.[1] Failing to obtain relief there, Perkins eventually brought a federal habeas proceeding in federal district court.

The federal case had its origin in allegations originally made in Perkins' second state-court motion for a new trial. There Perkins asserted that Martin had been induced to testify by the Boston police, that the prosecutor failed to disclose this inducement as required by <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83 (1963), and that the prosecutor knowingly allowed Martin to perjure himself by denying inducements. In a supporting affidavit, an acquaintance of Perkins claimed that Martin had admitted to him that he testified against the Perkins brothers because "an officer . . . of the Boston Police had told him that if he testified . . . [the officer] could help him out with his drug trafficking case." In his own affidavit, Perkins said that the first affiant had reported this to Perkins.

---

[1]<u>Commonwealth</u> v. <u>Perkins</u>, 878 N.E.2d 582 (Mass. App. Ct. 2008); <u>Commonwealth</u> v. <u>Perkins</u>, 821 N.E.2d 517 (Mass. App. Ct. 2005), <u>review denied</u> 825 N.E.2d 543 (Mass. 2005); <u>Commonwealth</u> v. <u>Perkins</u>, 761 N.E.2d 549 (Mass. App. Ct. 2002), <u>review denied</u> 766 N.E.2d 70 (Mass. 2002). Perkins also filed a collateral attack on his sentence in state court in 2007. <u>Commonwealth</u> v. <u>Perkins</u>, 877 N.E.2d 280 (Mass. App. Ct. 2007).

The state trial judge denied the motion, finding neither affidavit credible or material. Perkins then moved for reconsideration of the denial of his motion, this time supplying an affidavit from Martin himself averring that at the time of Martin's arrest shortly before the Perkins trial, a Boston police officer had "stated to [Martin] that [his] testimony in the Perkins' armed robbery case would make things a lot easier for [him] in [his] drug case," and that he "eventually ended up testifying against the Perkins brothers because [he] felt [his] cooperation in that case would go a long way in helping [him] in [his] drug trafficking case."

However, Martin also swore that he did not lie in his testimony against the Perkins and reaffirmed that he "was robbed and shot by Robert Perkins and Michael Perkins." The trial judge denied the motion for reconsideration and the state appeals court affirmed, noting that Martin had identified Perkins as one of his assailants long before his arrest on drug charges; that Martin never wavered from this accusation; that Martin's affidavit, insomuch as it reiterated that Perkins had robbed and assaulted him, confirmed his trial testimony; and that the trial judge, who decided the motion for a new trial, was in the best position to evaluate whether an evidentiary hearing on the issue was necessary. See Perkins, 821 N.E.2d at 517.

Unsuccessful at the state level, Perkins amended an earlier-filed habeas petition to include the disclosure and subornation of perjury claims made in his second motion for a new trial. This petition was denied by the district court in August 2007. Perkins v. Russo, No. 02-10460, 2007 WL 2507741, at *7 (D. Mass. Aug. 31, 2007). The district court applied the same prejudice standard to Perkins' claim that the prosecutor failed to disclose Martin's inducement to testify and his claim that the prosecutor failed to correct perjured testimony. Of the latter claim, the court stated that "the First Circuit treats such actions like a Brady violation and as subject to an identical prejudice inquiry" and denied the petition because "it was reasonable [for the state court] to conclude that the verdict would have been identical" had Martin disclosed his alleged conversations with the police. Id. at *7.

Perkins sought a COA on multiple grounds, including an assertion that both the state court and the federal district court had applied an incorrect prejudice standard to his subornation claim. According to Perkins, a criminal defendant alleging subornation of perjury need show only "any reasonable likelihood that the false testimony could have affected the judgment of the jury," United States v. Agurs, 427 U.S. 97, 103 (1976), whereas a successful Brady claim requires a showing of "a reasonable probability that, had the evidence been disclosed to the defense,

the <u>result</u> of the proceeding would have been different." <u>United States</u> v. <u>Bagley</u>, 473 U.S. 667, 682 (1985) (emphasis added).  The district court granted the COA, narrowing the issue to whether Perkins established prejudice under the more defendant-friendly standard of materiality for subornation  of perjury claims. <u>Perkins</u> v. <u>Russo</u>, No. 02-10460, 2008 WL 4793806, *3 (D. Mass. Oct. 31, 2008).

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") ordinarily requires those seeking review of a state court decision to show that the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d) (2006).  The "contrary to" language requires that the state court apply a rule that in terms or effect contradicts Supreme Court precedent, <u>Williams</u> v. <u>Taylor</u>, 529 U.S. 362, 405 (2000); the "unreasonable application of" language requires that the state court identify the correct legal rule "but unreasonably appl[y] that principle to the facts of the prisoner's case."  <u>Id.</u> at 413.

A threshold question, however, is whether the relevant issue was "adjudicated on the merits" by the state court.  28 U.S.C. § 2254(d); <u>see also</u> <u>Zuluaga</u> v. <u>Spencer</u>, 2009 WL 3335991, at *1 (1st Cir. Oct. 19, 2009).  If so, the AEDPA deferential standards apply; if not, the petitioner is entitled to <u>de novo</u>

review of the issue by the federal court. <u>Zuluaga</u>, 2009 WL 3335991, at \*1. We have held that a federal claim can be adjudicated on the merits even when the state court cites only state law, <u>see</u> <u>McCambridge</u> v. <u>Hall</u>, 303 F.3d 24, 35 (1st Cir. 2002), but this case presents a more complicated situation: the state court treated Perkins' disclosure and subornation claims interchangeably and did not cite any cases--state or federal-- discussing the standards governing those claims. <u>See</u> <u>Perkins</u>, 821 N.E.2d at 517; <u>cf.</u> <u>Perkins</u>, 2007 WL 2507741 at \*6. But as it turns out, even <u>de novo</u> review does not help Perkins.

Perkins is correct that a prosecutor's knowing inducement of perjury is treated more harshly than a failure, which could be inadvertent, to disclose exculpatory evidence. In the latter case- -which is the more typical <u>Brady</u> claim--failure to disclose is deemed fatal only if there is a "reasonable probability" that disclosure would have altered the outcome of the trial. <u>Bagley</u>, 473 U.S. at 682; <u>Mastracchio</u> v. <u>Vose</u>, 274 F.3d 590, 601 (1st Cir. 2001). But when a prosecutor knowingly uses perjured testimony, "a conviction . . . is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." <u>Agurs</u>, 427 U.S. at 103; <u>see also</u> <u>Mastrachio</u>, 274 F.3d at 601; <u>Gilday</u> v. <u>Callahan</u>, 59 F.3d 257, 267 (1st Cir. 1995). If the state court misunderstood this,

AEDPA would not shield the state court's decision on prejudice from plenary review.

Yet even with plenary review, Perkins' claim fails. Martin had identified Perkins multiple times before he was ever even arguably pressed to testify by one of the police officers. He never equivocated with respect to Perkins' involvement in his shooting; rather, he reaffirmed Perkins' guilt in the same affidavit that Perkins relies upon to show that Martin had been induced to testify. Even assuming that the police were treated as offering an inducement, the critical identification occurred <u>before</u> any such inducement was offered. Any claim that the identification rested on the inducement therefore falls flat on its face.

Further, Martin's stake in testifying had to be obvious to the jury regardless of whether the policeman's alleged comment were known to have occurred. Martin was in jeopardy due to his drug arrest as the jury learned from his testimony; and anyone with sense would know that he would be better off cooperating in an attempted murder case. Absent a specific promise of specific benefits, the jury already knew that he had a stake in supporting the state's position. Martin knew this, as his affidavit states; but the jury had to know it as well. The policeman's alleged statement only spelled out the obvious.

In light of these considerations, the prosecutor's failure to correct Martin's testimony--even assuming the prosecutor

knew of the supposed police statement and improperly failed to say so--would not have had "any reasonable likelihood . . . [of] affect[ing] the judgment of the jury." _Agurs_, 427 U.S. at 103. This is our own view so that even if we adopt Perkins' own standard of prejudice and assess the matter _de novo_, the claim would still fail on the present facts. Any added deference that might be required by AEDPA would merely be icing on the cake.

In fairness to the prosecutor, we note that Perkins points us to nothing that indicates that the prosecutor knew that the police officer had made the alleged comment to Martin. Subornation requires "the _knowing_ use of perjured testimony." _Agurs_, 427 U.S. at 103 (emphasis added). The police office who supposedly made the comment was apparently connected to Martin's drug arrest; whether he had any direct connection to the prosecution trial team aiming to prosecute Perkins is unclear. But given the lack of prejudice, what the prosecutor might have known does not matter.

_Affirmed_.


-Dissenting Opinion Follows-

**STAHL**, **Circuit Judge**, **dissenting**. With respect, I disagree with the majority's view of the case. Martin's identification of Perkins as one of the assailants was the central evidence of his guilt. There was no physical evidence tying Perkins to the crime and no other witness testified against him at trial. In addition, because Martin knew Perkins well -- he was his drug dealer and had dated Perkins' sister -- there was no issue of the reliability of his eyewitness identification. Rather, the paramount issue in the case was Martin's honesty. Did Martin identify Perkins as the assailant because Perkins in fact committed the crime or because Martin held a grudge against Perkins related to Martin's romantic relationship with Perkins' sister and wanted to frame him for the crime? Against this backdrop, it is now brought to the court's attention that, according to Martin's own affidavit, Martin lied at trial when asked whether he received any inducement to testify against Perkins. Because Perkins did not have access to important impeachment information to which he was entitled (that a police officer told Martin that "things [would go] a lot easier for [him]" if he testified against Perkins), Perkins was left to battle the key evidence of his guilt -- Martin's identification -- with one hand tied behind his back.

As a threshold matter, I believe we must review Perkins' claim de novo because, as the majority concedes, "the state court treated Perkins' disclosure and subornation claims interchangeably

-12-

and did not cite any cases--state or federal--discussing the standards governing those claims." See Pina v. Maloney, 565 F.3d 48, 54 (1st Cir. 2009) ("In the absence of a state merits determination, the more deferential habeas review under the Antiterrorism and Effective Death Penalty Act is inapplicable and our review is de novo."). In addition, on the prejudice question, the Massachusetts Appeals Court made no reference to or consideration of the Supreme Court's decision in United States v. Agurs, 427 U.S. 97 (1976).

Employing de novo review, I would reach a different answer than the majority on the prejudice question. The test for prejudice when there has been knowing suborning of perjury by the prosecution is whether, "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Agurs, 427 U.S. at 103. Given the particulars of this case, I think this relatively "defendant-friendly standard" is met. Mastracchio v. Vose, 274 F.3d 590, 601 (1st Cir. 2001). The case against Perkins relied almost entirely on the jury's perception of Martin's honesty. Yet, Martin's honesty was already called into question by at least two factors: his status as a drug dealer with pending charges against him and the presentation of evidence suggesting that Martin had a motive for disliking Perkins and wanting to frame him for the crime. Given that the jury had to convict Perkins beyond a reasonable doubt, I believe the additional

increment of doubt provided by the information that a police officer had induced Martin to testify against Perkins may well have "affected the judgment of the jury." Agurs, 427 U.S. at 103.

The majority dismisses the importance of the inducement evidence by stating that it "had to be obvious" to the jury that Martin had a personal stake in testifying and "anyone with sense" would know that Martin would be better off cooperating. The majority concludes that, "The policeman's alleged statement only spelled out the obvious." However, guilt and innocence, and in this case the question of prejudice, should be determined based on the evidence presented at trial. We should not rely on a vague notion that the jury surely must have presumed as much as a substitute for the admission of persuasive impeachment material that could well have tipped the scale in Perkins' favor. Effective and constitutionally sufficient defenses are not built on hunches and presumptions of general knowledge on the part of the jury; they are built on admissible evidence. To conclude otherwise, I believe, ignores the central crucible of our adversarial system.

In addition, I am not persuaded by the majority's argument that the impeachment evidence was irrelevant simply because Martin made his identification of Perkins shortly after the incident and before his own arrest in the subsequent drug case. This ignores Perkins' argument, made at trial, that Martin should not have been believed because, at the time of the identification,

he had a contemporaneous reason to dislike and therefore frame Perkins.

Thus, because I would conclude that there is a reasonable likelihood that prejudice would have resulted had there been suborning of perjury regarding the inducement, I would remand the case to the district court for an evidentiary hearing on the subornation issue. The majority dismisses the relevance of what I see as the most important question in this case -- whether the prosecutor knew or should have known of Martin's apparent perjury. Agurs, 427 U.S. at 103. I would remand for a factual finding on precisely that issue.

In a case where guilt and a significant prison sentence hinged on the testimony of one man -- an admitted drug dealer facing criminal charges of his own -- and where there is a supported claim of suborned perjury regarding material that might well have impeached the credibility of that sole witness, I believe an evidentiary hearing to determine whether subornation actually occurred is appropriate and just.

I therefore respectfully **dissent**.